**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TRUSTEES OF THE S.E.I.U LOCAL NO. 4 PENSION FUND,** | ) ) ) | |
| **Plaintiffs,** | ) | Case No. _____ |
| v. | ) ) | |
| **COURTYARD HEALTHCARE CENTER, LLC,** an Illinois Limited Liability Company; **COURTYARD REALTY AT BERWYN, LLC,** an Illinois Limited Liability Company; **PREMIER HEALTHCARE MANAGEMENT, LLC,** an Illinois Limited Liability Company; **PERSHING GARDENS HEALTHCARE, LLC,** an Illinois Limited Liability Company; **GILMAN HEALTHCARE CENTER, LLC,** an Illinois Limited Liability Company; **BARAK BAVER,** an Individual, and **UNKNOWN RECIPIENT;** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiffs, the Trustees of the S.E.I.U. Local No. 4 Pension Fund ("Pension Fund"), by their Attorney, Naomi Frisch of Asher, Gittler & D'Alba, Ltd., complain against Defendants, Courtyard Healthcare Center, LLC, ("Healthcare"), Courtyard Realty at Berwyn, LLC ("Realty"), Premier Healthcare Management, LLC ("Premier"), Pershing Gardens Healthcare Center, LLC ("Pershing"), Gilman Healthcare Center, LLC ("Gilman"), Barak Baver ("Baver"), and other unknown entities as follows:

1

## Nature of the Case

This is an action to collect withdrawal liability owed to a multiemployer pension fund under the Employee Retirement Income Security Act of 1974 as amended by the Multiemployer Pension Plan Amendment Acts of 1980, 29 U.S.C. § 1001-1461 ("ERISA"). Defendants Healthcare and Realty were adjudged by this Court to owe such withdrawal liability to the Pension Fund in a separate action. *Trustees of S.E.I.U. Loc. No. 4 Pension Fund v. Courtyard Healthcare Ctr., LLC*, No. 20 C 2749, 2023 WL 2663561, at *2 (N.D. Ill. Mar. 28, 2023). In post-judgment collection efforts, Plaintiffs discovered that after Healthcare and Realty had knowledge of the assessed withdrawal liability, and after ceasing operations and claiming that no assets remained available to either Defendant to pay the withdrawal liability, monies passed through the bank accounts of both Defendants and were paid to other entities, which, upon information and belief were not beneficiaries of the sale of the companies, in amounts sufficient to pay the withdrawal liability.[1] Plaintiffs, Trustees of the Pension Fund, now bring this action against Defendants Healthcare and Realty, and the recipients of the aforementioned monies, and complain that such transactions were made with a principal purpose of evading or avoiding the withdrawal liability owed. *See* 29 USC §§ 1392(c), 1451(a); *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Illinois Range, Inc.*, 186 F.R.D. 498, 502 (N.D. Ill.), adopted in part, 71 F. Supp. 2d 864 (N.D. Ill. 1999) ("any assets that were transferred in order to "evade or avoid liability," *as well as the parties to whom they were improperly transferred,* must be within the reach of the statute. . . .

---

[1] An Employer has a duty to make payments towards withdrawal liability as soon as it is assessed; the statutory scheme of ERISA requires that, upon receiving notice of an assessment of withdrawal liability, an employer "shall" make interim payments while liability is in dispute. 29 USC § 1401(d); *Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 636 F.Supp. 641, 680-81 (N.D. Ill., 1986); *Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 657 F.Supp. 875, 884-85 (N.D. Ill., 1987).

Those assets must therefore be recoverable from the parties to whom they have been illegitimately transferred"). Plaintiffs seek reversal of those transactions so that those assets may be made available to pay the withdrawal liability, along with attorneys' fees, costs, and interest as prescribed by ERISA to protect the beneficiaries of the Pension Fund.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This action arises under Federal law, specifically, the Employee Retirement Income Security Act of 1974 as amended by the Multiemployer Pension Plan Amendment Acts of 1980, 29 U.S.C. § 1001-1461 ("ERISA").

2. The Court has jurisdiction over this action pursuant to 29 U.S.C. § 1451(c).

3. Venue in this Court is proper pursuant to 29 U.S.C. § 1451(d).

## PARTIES

4. Plaintiffs are the Trustees of the S.E.I.U. Local No. 4 Pension Fund. The Pension Fund is a multiemployer pension plan within the meaning of 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5. The Board of Trustees of the Pension Fund is the Plan Sponsor and the Plan Administrator of the Pension Fund within the meaning of 29 U.S.C. § 1301(a)(10)(A). The Plan is administered from 2229 S. Halsted Street, Chicago, Illinois 60608.

6. The Trustees, as fiduciaries of the Pension Fund, are authorized to bring this action on behalf of the Pension Fund, its participants, and its beneficiaries for the purpose of collecting withdrawal liability owed to a pension plan.

7. Courtyard Healthcare Center, LLC was an Illinois Limited Liability Company whose principal office is registered with the State of Illinois as 2824 West Coyle, Chicago, IL 60645. It was managed by Barak Baver, and its registered agent is Stephen Sher, 5750 Old Orchard Road, Suite 420, Skokie, IL 60077.

8. Courtyard Realty at Berwyn, LLC, was an Illinois Limited Liability Company whose principal office is registered with the State of Illinois as 2824 West Coyle, Chicago, IL 60645. It was managed by Barak Baver, and its registered agent is Stephen Sher, 5750 Old Orchard Road, Suite 420, Skokie, IL 60077.

9. Premier Healthcare Management, LLC is an Illinois Limited Liability Company whose principal place of business is 7836 Frontage Rd, Skokie, IL 60077. It is operated and managed by Barak Baver, and its registered agent is Howard M. Zavell, 85 Algonquin Rd, Suite 420, Arlington Heights, IL 60005.

10. Pershing Gardens Healthcare Center, LLC is an Illinois Limited Liability Company whose principal place of business is 3900 South Oak Park Ave, Stickney, IL 60402. Its registered agent is Stephen Sher, 5750 Old Orchard Road, Suite 420, Skokie, IL 60077.

11. Gilman Healthcare Center, LLC is an Illinois Limited Liability Company whose principal place of business is 1390 S. Crescent St, Gilman, IL 60938. Its registered agent is Stephen Sher, 5750 Old Orchard Road, Suite 420, Skokie, IL 60077.

12. Barak Baver is an individual who, upon information and belief, resides in the Northern District in Cook County, Illinois.

13. The Defendant identified as "Unknown Recipient" is an entity who received $517,892.91 from Defendant Healthcare on April 20, 2020.

## FACTS COMMON TO ALL COUNTS

14. Defendant Healthcare operated a nursing home in a building owned by Defendant Realty from at least 2012 until on or around January 31, 2019.

15. Healthcare was signatory to a collective bargaining agreement with SEIU Local No. 4, which required contributions to the Pension Fund on behalf of its employees.

16. Effective on or around January 31, 2019, Realty sold the property and Healthcare transferred operations of the nursing home to Berwyn Skilled Nursing Facility, LLC, an Illinois Limited Liability Company ("New Operator").

17. As part of the operations transfer agreement between Healthcare and the New Operator, the New Operator expressly declined to accept liability for any withdrawal from the Pension Fund.

18. On February 13, 2019, Baver, as manager of Healthcare and Realty, sent a letter to the Pension Fund, notifying it of the transfer and stating, "Courtyard Realty and Courtyard Healthcare… are now empty shells with no assets," and "I am sorry that you are left with accounts payable that will go unpaid."

19. On August 13, 2019, the Pension Fund sent a Notice and Demand for Withdrawal Liability to Healthcare, via Baver, pursuant to 29 USC § 1399.

20. No payments towards the assessed withdrawal liability were made by Healthcare or any other Defendant after the notice was sent.

21. On May 5, 2020, the Pension Fund initiated a lawsuit against Healthcare to collect the withdrawal liability. The Complaint was later amended to include Realty as a Defendant.

22. On March 28, 2023, judgment was entered in case No 20-CV-02749 against Defendants Healthcare and Realty in the amount of $191,947.00 plus interest at prevailing rates, and all costs and expenses, including attorneys' fees (the "Judgment"). *Trustees of S.E.I.U. Loc. No. 4 Pension Fund v. Courtyard Healthcare Ctr., LLC*, No. 20 C 2749, 2023 WL 2663561, at *2 (N.D. Ill. Mar. 28, 2023).

23. On August 30, 2023, this Court granted Plaintiffs' fee petition in the amount of $28,177.50.

24. No Defendant has made any payments to Plaintiffs in satisfaction of the Judgment.

25. On or around October 23, 2023, Plaintiffs served Defendants Healthcare and Realty with Citations to Discover Assets.

26. In response to the Citations, Defendants provided to Plaintiffs bank statements for the bank accounts of Healthcare and Realty for the period of January 1, 2018, through the last date the accounts were open.

27. These statements show that Healthcare's operating account closed on or around December 31, 2021.

28. These statements show Realty's operating account closed on or around March 31, 2024.

29. In response to the Citations to Discover Assets, Defendant Baver appeared and testified under oath on behalf of Defendants Healthcare and Realty.

30. Baver testified that Both Healthcare and Realty ceased operations on or around January 31, 2019.

31. Baver testified that the accounts remained open after the businesses ceased operations in order to assist in the transition to the new operator and to continue paying remaining debts and obligations of each Company that remained after the transfer.

32. In February of 2020, more than $1.2 Million was deposited into Realty's bank account, and then paid out to various other entities, including net payments as follows:

    a.    $50,000.00 to Defendant Baver

    b.    $130.00 to Defendant Gilman

    c.    $56,325.00 to Defendant Premier

33. When asked about those payments under oath, Baver testified he could not remember what the payments were for[2].

34. On April 20, 2020, a check in the amount of $517,892.91 was paid from Healthcare's operating account. The payee of that check is not identified in Healthcare's bank statement. For purposes of this litigation, that payee is identified as Defendant "Unknown Recipient."

35. When asked about that check under oath, Baver testified he could not remember what that payment was for or who the money went to.

36. On November 19, 2021, $52,500 was transferred from Realty's bank account to Defendant Gilman.

---

[2] On October 31, 2024, this Court granted Plaintiffs' motion to compel Baver to answer questions with respect to purported related entities and some of the transfers described herein. *See* Case No. 20-CV-02749, Docket # 103. Accordingly, on November 5, 2024, Plaintiffs served Defendants Healthcare and Realty with new Citations to Discover Assets. While there is some overlap between what Plaintiffs may discover in that Citation process and the relief sought here, Plaintiffs believe this action is necessary, and the concurrent proceedings will only expedite any possible resolution.

37. On December 21, 2021, $70,000 was transferred from Realty's bank account to Defendant Gilman.

38. In February, 2022, the month that Summary Judgment was filed in the withdrawal liability case against Healthcare and Realty, $70,000 was transferred from Realty's bank account to Defendant Gilman.

39. On June 21, 2022, $70,000 was transferred from Realty's bank account to Defendant Pershing.

40. When asked about that transfer under oath, Baver testified that he could not recall what it was for.

41. On January 4, 2023, $4,400 was transferred from Realty's bank account to Defendant Gilman.

42. Defendant Baver is the manager of Defendant Premier.

43. Defendant Premier is a nursing home consulting company which, upon information and belief, processes accounts payable and accounts receivable transactions for Defendants Gilman and Pershing.

44. Premier consulted (i.e., processed accounts payable and accounts receivable) for Defendant Healthcare while it was operating.

45. Baver testified that Premier never acted as a consultant for Realty.

46. Some of the money coming into Realty's account between 2019 and 2024 came from Defendant Premier.

47. Some of the money coming into Realty's account between 2019 and 2024 came from the following accounts for which Defendant Baver was the only signatory:

8

      a.      Norridge Gardens, LLC, "Operating Account"

      b.      Norridge Gardens, LLC, "Resident Personal Funds Account"

      c.      Champaign Urbana Nursing and Rehab LP, "Operating Account"

      d.      Champaign Urbana Nursing and Rehab LP, "Resident Personal Funds Account"

48. Upon information and belief, Defendant Premier consulted for Norridge Gardens, LLC and Champaign Urbana Nursing and Rehab LP.

49. Defendant Baver controlled and/or controls the bank accounts of Defendants Healthcare, Realty, Baver, Premier, Gilman, and Pershing.

50. Defendant Baver controlled and/or controls the bank accounts of other nursing homes for which Premier consulted.

51. In September of 2022, monies were transferred into Defendant Realty's account from Defendant Premier, Defendant Baver, and from two accounts belonging to Norridge Gardens, LLC. That money was distributed to several entities, including Realty's attorney ($12,500), Champaign Urbana Nursing and Rehab LP ($9050), and back to Norridge Gardens (net of $43,400).

52. For at least three years after Defendants Healthcare and Realty ceased operations, Defendant Baver used Healthcare's and Realty's bank accounts to move money from one nursing home to the other, thereby comingling the assets of all Defendants and the assets of Norridge Gardens, LLC and Champaign Urbana Nursing and Rehab, LP, and likely other nursing homes for which Premier provided consulting services.

53. During at least the months of February, 2020, April, 2020, February, 2022, and September, 2022, Baver transferred money out of Healthcare's and Realty's bank account with the knowledge that withdrawal liability was owed.

54. The purpose of these transfers out of Healthcare's and Realty's accounts was to create the appearance that Healthcare and Realty had no assets with which to pay their withdrawal liability, and were therefore made with a purpose of evading or avoiding the obligation to pay withdrawal liability.

## COUNT I

## EVADE OR AVOID LIABILITY UNDER ERISA

55. Plaintiffs reallege and incorporate all previous paragraphs as if fully alleged herein.

56. Plaintiffs, as Trustees of the Pension Fund, have a fiduciary duty to ensure the financial viability of the Fund, and are empowered to collect amounts owed from any party who takes adverse action against the Fund. 29 USC § 1451(a).

57. If a principal purpose of any transaction is to evade or avoid withdrawal liability, such transaction may be voided in order to collect such withdrawal liability. 29 USC § 1392(c). In such cases, a plaintiff can reach those assets that were transferred in order to evade or avoid liability, as well as the parties to whom they were improperly transferred. Each Defendant in this action either was adjudged liable to the Pension Fund for the Judgment, or was the recipient of one or more of the improper transactions made in order to avoid or evade liability to the Pension Fund.

58. Even where an employer challenges an assessment of withdrawal liability, they have an obligation to pay withdrawal liability while such dispute is pending. 29 USC § 1401(d);

*Banner Industries, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 657 F.Supp. 875, 884-85 (N.D. Ill., 1987).

59. The following transactions of assets away from Defendants Healthcare and Realty, and likely other similar transactions, were made when Defendants Healthcare and Realty, and their agent Baver, who also controlled Defendants Premier, Pershing, and Gilman, knew of the withdrawal liability assessed against Healthcare and Realty. Some were made after Summary Judgment was filed in the withdrawal liability case:

    a. Payment to Barak Baver of $50,000.00 on February 25, 2020;

    b. Payments to Gilman Healthcare Center, LLC of $130.00 on February 12, 2020, $52,500.00 on November 19, 2021, $70,000.00 on December 21, 2021, $18,800.00 on February 28, 2022, $51,200.00 on February 25, 2022, and $4,400.00 on January 4, 2023, totaling $197,030.00;

    c. Payment to an unknown recipient of $517,892.91 on April 20, 2020;

    d. Payments to Premier Healthcare Management, LLC of $5,000.00 on February 11, 2020, $1,000.00 on February 21, 2020, $20,000 on February 25, 2020, and $30,325,00 on February 27, 2020, totaling $56,325.00;

    e. Payment to Pershing Gardens Healthcare, LLC on June 21, 2022 in the amount of $70,000.00.

60. The transactions described in the previous paragraph total $891,247.91 in assets which could have been used to pay the withdrawal liability assessed against Healthcare and Realty.

61. For years after ceasing operations, Defendant Baver engaged in a practice of passing assets through the bank accounts of Healthcare and Realty.

62. In his testimony at the Citation to Discover Assets, Baver provided no valid explanation as to the specific purpose of the transactions which placed assets into Healthcare and Realty's bank accounts and subsequently removed them. Baver's testimony that he could not remember or did not know why these assets were transferred in and out was not credible, especially in light of his claims that such transactions were made with the purpose of paying remaining liabilities of Healthcare and Realty; liabilities which he could not specifically identify or explain.

63. Instead of paying the withdrawal liability at issue in this matter, a clear liability that was owed, monies were transferred out of Healthcare and Realty's accounts to Defendants Baver, Premiere, Pershing, Gilman, and an Unknown Recipient, totaling more than enough to pay the withdrawal liability, while Baver, the decision-maker, had knowledge that the withdrawal liability was owed.

64. The consummation of the transactions described herein allowed Healthcare and Realty to avoid or evade paying the withdrawal liability owed under the Judgment.

65. Therefore, the transactions described herein, and others discoverable in this lawsuit, were made with a principal purpose of evading or avoiding that withdrawal liability, and the transactions should be voided so the withdrawal liability can be paid in accordance with the mandates of ERISA.

WHEREFORE, Plaintiff requests the following relief:

A. An order finding that the transactions identified herein, and any other such transactions from Defendants Realty and Healthcare to other Defendants or entities as may be discovered in the course of this action, were made for the purpose of evading or avoiding withdrawal liability to Plaintiffs;

12

B. An order granting reversal of those transactions and an immediate transfer of the Judgment amount, including interest, attorneys' fees, and expenses, to Plaintiffs;

C. Pursuant to 29 U.S.C. § 1451(e), an award of all costs and expenses incurred in connection with this action including reasonable attorneys' fees;

D. Such further or different relief as the court deems just and proper to protect the assets of the Pension Fund.

Dated: November 7, 2024

Respectfully Submitted:
*/s/ Naomi B. Frisch*
Naomi B. Frisch
Attorney for Plaintiffs
Asher, Gittler & D'Alba, Ltd.
200 West Jackson Boulevard, Suite 720
Chicago, Illinois 60606
(312) 263-1500 ph
naomi@ulaw.com
IL ARDC#: 6328429